**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

EVE WEXLER
Plaintiff,

v.

KENNESAW PEDIATRICS, P.C.

Defendant.

**CIVIL ACTION FILE NO.**
1:16-cv-01491-TCB-JSA

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

**1. Description of Case:**

**(a) Describe briefly the nature of this action.**

**For Plaintiff:**

Plaintiff has alleged that defendant discriminated against her on the basis of her sex. Plaintiff alleges that defendant was motivated to fire plaintiff either solely (single motive) or in part (mixed motive) because of her sex.

**For Defendant:**

Plaintiff has alleged that defendant discriminated against her on the basis of her sex, and her status as a mother who was pumping at work, by firing (discharging) and then suing her. Plaintiff alleges that defendant was motivated to fire plaintiff, and then sue her, either solely (single motive) or in part (mixed motive) because of her sex, and her status as a mother who was pumping at work.

At the parties planning conference, defendant denied alleging or bringing an action based on retaliation and denied alleging or bringing an action based on a hostile environment.

**(b) Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**Plaintiffs' Summary:**

Defendant through its director Dr. Mark Long was hostile towards Plaintiff because she was a female who chose to give her son breast milk. She was told to pump in the bathroom and was disparaged and insulted for pumping breast milk at work. She was told that she was not entitled by law to pump breast milk at work but because she was well liked he could arrange her schedule so that her "breasts can refill". Plaintiff felt discriminated against and felt that Defendant wanted her to stop pumping breast milk. Plaintiff was fired without having been given a chance to explain what occurred which is upon information and belief against the business practices and procedures of the Defendant. Plaintiff was fired apparently because she solicited another employee Dr. Axelrod but Dr. Axelrod initiated the conversation and was given a chance to explain what had happened and Dr. Wexler was not given that chance. Further, Defendant first claimed Dr. Wexler was fired for soliciting but then changed its story that she was fired for lying after Plaintiff filed her EEOC claim. Also, the solicitation Dr. Wexler is alleged to having engaged in was water cooler talk that does not constitute solicitation and

does not allow Defendant to fire Plaintiff when her employment was subject to a contract which did not allow her to be fired for that. Plaintiff was qualified for the job and Dr. Long had expressed displeasure with Plaintiff's female related condition just a short time before terminating her.

After firing Dr. Wexler, Kennesaw Pediatrics made written demand that she sign an agreement given to Dr. Wexler on a take it or leave it basis which contained onerous terms that included but was not limited to having her falsely admit to facts that did not happen, prejudicing her legal and contractual rights and paying $10,000 in damages.

**Defendant's Summary:**

Plaintiff Eve Wexler M.D. worked as a pediatrician for Defendant Kennesaw Pediatrics, P.C. from December 23, 2013 until she was fired on May 15, 2014. Defendant fired Dr. Wexler because Dr. Mark A. Long, Defendant's Medical Director, believed that Dr. Wexler had solicited Dr. Jagdish Seth, another doctor at Kennesaw Pediatrics in violation of her written employment agreement.

Dr. Long's belief was well grounded in fact: on or about May 14, 2015 Dr. Wexler approached Dr. Seth at work about opening a medical practice with Dr. Wexler and Dr. Axelrod and invited Dr. Seth to a planning meeting to discuss the

matter. See Plaintiff's Complaint ¶ 56. Dr. Seth brought the matter to Dr. Long's attention. Dr. Long first asked Dr. Axelrod about this, and she confirmed the discussions. Dr. Long confronted Dr. Wexler about these allegations. Dr. Wexler denied them, and Dr. Long fired her. Dr. Wexler denies being given a change to respond the allegations, see Plaintiff Complaint ¶67 (Plaintiff was not given an opportunity to respond to Dr. Long's allegations that Plaintiff was trying to steal his employees and open a new practice during this phone call).

Dr. Long had given Dr. Wexler a good review a few days before May 14, 2015. Dr. Wexler, in her deposition, states at this review that Dr. Long "asked me how I was doing and then told me that I was a great physician and all the patients loved me and the nurses loved me and he loved having me on board." (Wexler depo. 64:24 – 65:6). During this review, Dr. Wexler expressed happiness and satisfaction with her job. However, she was already looking for other jobs and had begun discussing opening a new practice with Dr. Axelrod.

After firing Dr. Wexler, Kennesaw Pediatrics made written demand that she return a $5,000 signing bonus and obtain tail insurance, as required by her written employment agreement. Kennesaw Pediatrics also made demand for an additional $5,000 for a small part of the damages that Dr. Wexler caused. Dr. Wexler denied liability and in turn demanded $35,000, alleging sex discrimination. After negotiations broke down, Kennesaw Pediatrics instigated litigation against Dr.

Wexler on July 29, 2014 alleging breach of contract and breach of the duty of loyalty and faithful service. The case is in the Superior Court of DeKalb County, Georgia, styled *Kennesaw Pediatrics, P.C. v. Eve Wexler, M.D.*, Civil Action No. 14-cv-7660, before Judge Jackson. Motions for summary judgment are pending before Judge Jackson in the Superior Court action at the time of the filing of this Joint Preliminary Report.

When Kennesaw Pediatrics hired Dr. Wexler, it knew that she would be pumping breast milk at work. Kennesaw Pediatrics made accommodations for Dr. Wexler's pumping needs: it provided her with two, paid pumping breaks per day, in addition to lunch, and in January 2014 provided her with a private, secured office in which to pump. Dr. Wexler alleges that, when she started in December 2013, she was initially required to pump in a bathroom; Kennesaw Pediatrics denies this. She later pumped in clean, unoccupied, but unsecured patient rooms. She was not satisfied with these accommodations, and in January 2014 Kennesaw Pediatrics provided her with a secured, private office to use during her pumping breaks. Dr. Long never harassed Dr. Wexler about her pumping or her pumping schedule.

Dr. Wexler alleges that at her review in May 2014, but after Dr. Long had given her a glowing review, she told Dr. Long that she would be pumping for an additional two weeks and that he reacted negatively to this and became "visibly

irritated and frustrated" (Plaintiff's complaint ¶85). Dr. Long denies this allegation and denies recalling Dr. Wexler raising the issue of pumping at her informal review May 2014. The topic of Dr. Wexler's pumping, however, was discussed at a meeting with Dr. Wexler, Dr. Brugner and Dr. Long in May 2014 sometime before her informal review, and the conclusion was that she was going to continue to take pumping breaks because she felt her child was having some trouble with solid food (although it may be that Dr. Wexler had planned, at one time, to stop pumping earlier). Dr. Long did not become angry with her at either meeting. Dr. Wexler points out that Dr. Long did not fire Dr. Axelrod, who is female, but who was not pumping.

Dr. Long did not fire Dr. Axelrod because it was Dr. Wexler, not Dr. Axelrod, who actually solicited Dr. Seth, Dr. Axelrod had been with the practice longer than Dr. Wexler, the practice had invested money in assisting Dr. Axelrod with board prep, and Dr. Axelrod essentially admitted the allegations made by Dr. Seth while Dr. Wexler denied them. Dr. Long believed that Dr. Wexler was more of the instigator than Dr. Axelrod and that Dr. Wexler was more complicit. Dr. Wexler also had expressed satisfaction with her job at her May 2014 review, and the discovery soon thereafter that she was in discussions over opening her own office, with Kennesaw Pediatrics personnel, undermined her standing with Dr. Long.

**(c) The legal issues to be tried are as follows:**

**For Plaintiff:**

1- Whether Plaintiff is entitled to the protections of the law based on her sex;

2- Whether Defendant terminated Plaintiff based on her sex;

3- Whether Defendant had legitimate, non-discriminatory reasons for its termination of plaintiff;

4- Whether Defendant's stated reasons for terminating Plaintiff were pretextual;

5- Whether the Defendant's termination of Plaintiff's employment constituted disparate treatment;

6- Whether Defendant's actions created a disparate impact for Plaintiff;

7- Whether the Defendant's termination of Plaintiff was an intentional violation of Title VII

8- Whether the Defendant's termination of Plaintiff's employment constituted or was motivated by malice;

9- Whether the defendant's termination of Plaintiff's employment showed willful disregard for Plaintiff's rights;

10- Whether the Defendant's termination of Plaintiff's employment was conducted with reckless indifference to Plaintiff's rights;

11- Whether the Defendant's termination of Plaintiff's employment was reasonable;

12- How much, if any, damages should be awarded to Plaintiff.

**For Defendant:**

(i) whether Plaintiff can show a prima facie case of sex-based discrimination, whether single motive or mixed motive;

(ii) whether Defendant, when it fired Dr. Wexler, was motivated by discriminatory animosity based on Dr. Wexler's sex or on her status as a mother pumping at work;

(iii) whether the Plaintiff can prove circumstances surrounding Dr. Long's (alleged) remarks at Dr. Wexler's review in May 2014, or otherwise during her employment, that show that Defendant actually relied on Dr. Wexler's sex or status as a pumping mother in its decision to fire her;

(iv) whether the Plaintiff can prove that the reason Defendant gave for firing Dr. Wexler, i.e., that she had solicited Dr. Seth, was a pretext for unlawful sex-based discrimination;

(v) whether Dr. Long made the various statements alleged by Dr. Wexler regarding her sex or status as a pumping mother;

(v) with respect to Dr. Wexler's mixed motive cause of action, whether Defendant would have made the same decision to fire Dr. Wexler even in the absence of the alleged improper motive.

**(d) The cases listed below (include both style and action number) are:**

**(1) Pending Related Cases:** *Kennesaw Pediatrics, P.C. v. Eve Wexler, M.D.*, Civil Action No. 14-cv-7660, Superior Court of DeKalb County, Georgia, before Judge Jackson.

**(2) Previously Adjudicated Related Cases:** None

**2. This case is complex because it possesses one or more of the features listed below (please check):**

______ (1) Unusually large number of parties
______ (2) Unusually large number of claims or defenses
______ (3) Factual issues are exceptionally complex
______ (4) Greater than normal volume of evidence
______ (5) Extended discovery period is needed
______ (6) Problems locating or preserving evidence
______ (7) Pending parallel investigations or action by government
______ (8) Multiple use of experts
______ (9) Need for discovery outside United States boundaries
______ (10) Existence of highly technical issues and proof
______ (11) Unusually complex discovery of electronically stored information

**3. Counsel:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiffs:** Shimshon Wexler
315 W Ponce de Leon Ave, Suite 250
Decature, GA 30030

**Defendant:** Carl L. Sollee
Sollee Law, LLC
1376 Sheffield Drive, NE
Atlanta, GA 30329

**4. Jurisdiction:**

**Is there any question regarding this court's jurisdiction?**

____ Yes __x__ No

**If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

**5. Parties to This Action:**

**(a) The following persons are necessary parties who have not been joined:**

**For Plaintiff**

None.

**For Defendant**

None.

**(b) The following persons are improperly joined as parties:**

None.

**(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

**(d) The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6. Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.**

**(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:**

**For Plaintiff:**

None.

**For Defendant**:

At this time, Defendant has no plans to amend its pleadings, but reserves the right to make amendments in the future if necessary in accordance with the Fed. R. Civ. P.

**(b) Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7. Filing Times For Motions:**

**All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.**

**All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).**

**(a) *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.**

**(b) *Summary Judgment Motions:* within thirty (30) days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.**

**(c) *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.**

**(d) *Motions Objecting to Expert Testimony:* Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.**

**8. Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.**

The parties do not object to filing and serving initial disclosures in accordance with Fed.R.Civ.P. 26.

**9. Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.**

The parties do not request a scheduling conference, but may revisit this issue if necessary.

**10. Discovery Period:**

**The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A,**

**responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

**For Plaintiffs:**

**For Defendant:** All of the allegations in Plaintiff's Complaint and the defenses in Defendant's Answer.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

**11. Discovery Limitation:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed.**

None at this time, though Defendant may revisit this issue in the future.

**(b) Is any party seeking discovery of electronically stored information?**

**If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties have agreed to address and source and scope of producing electronically stored information, if necessary, after the exchange of discovery requests.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The parties have agreed that to the extent feasible the parties may exchange electronically stored information in PDF format on a disk.

In the absence of agreement on issues regarding discovery of electronically stored information and method of production the parties shall request a scheduling conference in paragraph 9 hereof.

**12. Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

**For Plaintiffs:**

**For Defendant:**

**13. Settlement Potential:**

(a) Lead counsels for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on June 16, 2016, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For Plaintiffs:

Lead counsel (signature): *<u>/s/ Shimshon Wexler</u>*

For Defendant:

Lead counsel (signature): */s/ Carl L. Sollee*

Other participants: None

(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.
(__X__) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____) No possibility of settlement.

(c) Counsel(__X__) do or (____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.

(d) The following specific problems have created a hindrance to settlement of this case.

The parties are exploring this possibility and will throughout and/or after discovery.

None.

**14. Trial by Magistrate Judge:**

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a) The parties (______) do consent to having this case tried before a magistrate judge of this court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ____________ day ____________________, of 20___.

(b) The parties (__X___) do not consent to having this case tried before a magistrate judge of this court.

Respectfully submitted this 28th day of June 2016.

/s/Shimshon Wexler
Shimshon Wexler
Georgia Bar No. 436163
Attorney for Plaintiff

/s/ *Carl L. Sollee*
Carl L. Sollee
Georgia Bar No. 000242
Attorney for Defendant

PLEASE ADDRESS ALL COMMUNICATIONS TO:

Shimshon Wexler
315 W Ponce de Leon Ave, Suite 250
Decatur, GA 30030

PLEASE ADDRESS ALL COMMUNICATIONS TO:

Carl L. Sollee
Sollee Law, LLC
1376 Sheffield Drive, NE
Atlanta, GA 30329
(404) 633-8223 (phone)
carl@solleelaw.com

*****************************