UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EVE WEXLER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:16-cv-1491-TCB-JSA |
| | ) | |
| v. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| KENNESAW PEDIATRICS, PC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Eve Wexler ("Plaintiff" or "Dr. Wexler") and files this *Brief in Opposition to Defendant's Motion for Summary Judgment*, as follows:

## I.    INTRODUCTION

Dr. Eve Wexler, a skilled pediatrician, was suddenly terminated from her employment with Kennesaw Pediatrics ("Defendant") by Dr. Mark Long ("Dr. Long"), her supervising physician, on May 15, 2014. At the time, Dr. Wexler was breastfeeding her young child, which was an issue of consternation for Dr. Long. According to Dr. Long, breastfeeding employees are not as profitable as non-breastfeeding employees. [Long Dep. Pg 7, 15-17]. This, and numerous other

statements by Dr. Long, evidence a bias against pregnant employees, and particularly those who breastfeed.

The purported reason Dr. Long has given for terminating Dr. Wexler—that she solicited another doctor to start a new practice—is lacking in credibility for a number of reasons. First, another doctor, who was not breastfeeding, yet who also made the same sort of remarks that Dr. Long perceived as solicitation, was not terminated. Second, though Dr. Long has claimed that his anger toward Dr. Wexler came from the fact that she "lied" when questioned about the alleged solicitation, the facts do not support his claim. Dr. Wexler, in fact, never denied making the statements to her fellow doctor, which Dr. Long perceived as solicitation. And Dr. Long never even gave Dr. Wexler an opportunity to admit or deny the solicitation, instead terminating her immediately in a very brief phone conversation.

The combination of Dr. Long's numerous biased comments, and evidence to show that Dr. Long treated Dr. Wexler less favorably than a non-breastfeeding employee, and then conjured up a false explanation for his actions, create a mosaic of circumstantial evidence that will allow the finder of fact to determine that Dr. Wexler was the victim of discrimination on the basis of her pregnancy-related medical condition, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended by the Pregnancy Discrimination Act ("PDA").

## II.   FACTS

Plaintiff hereby incorporates by reference her statement of material facts, as well as her declarations attached to this brief and Defendant's brief.

### A. Standards of Proof under Title VII

The Pregnancy Discrimination Act ("PDA") amended Title VII to provide that discrimination "because of sex" includes discrimination on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e-(k).

Claims of employment discrimination are not proven based on any "rigid, mechanized, or ritualistic" test. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Discrimination may be proven by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011), *citing* Silverman v. Bd. of Educ., 637 F.3d 729, 734 (7th Cir. 2011).

Pregnancy discrimination cases may also be proven according to the familiar McDonnell-Douglas framework. Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1353, 191 L. Ed. 2d 279 (2015). Under that framework, a plaintiff must first prove a "prima facie" case of discrimination. Reeves v. Sanderson Plumbing Prod.,

Inc., 530 U.S. 133, 149 (2000). Once she has done so, the employer has the opportunity to proffer a non-discriminatory explanation for the adverse employment action, and the plaintiff then bears the burden to show that the employer's proffered explanation is "unworthy of credence." Id. at 143.

Moreover, under Title VII, a plaintiff need not show that a protected characteristic was the sole reason for an adverse employment action. Rather, the plaintiff's burden is simply to show that the protected characteristic was a motivating factor for the Defendant's employment decision as articulated. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016).

**B. The record contains a convincing mosaic of circumstantial evidence that will permit the jury to infer discrimination**

Defendant's brief is focused almost exclusively on the McDonnell-Douglas burden-shifting framework. Defendant sidesteps the mosaic of circumstantial evidence that evidences Dr. Long's anti-pregnancy bias. This evidence includes testimony that Dr. Long stated to Dr. Levine, a previous doctor who worked for Defendant, "Why don't you go stand over by the space heater to dry up your eggs" implying that she should become infertile. [Levine Dep. Pg. 10-11, 11-1]. Dr. Long made a comment to Dr. Levine that he did not want to hire a potential physician candidate for a position while the candidate was undergoing IVF. [Levine Declaration, Ex. 15 to Defendant's brief]. In a conversation prior to taking the job,

Dr. Wexler asked Dr. Long if she could have pumping breaks, to which Dr. Long replied, "yes, but it will affect your bonus." [Wexler Dep Pg. 38, 13-17]. Dr. Long stated to Dr. Wexler by email that her productivity was being affected by pumping, in response to an email from Dr. Wexler that never asked anything regarding her productivity bonus. [Long Dep Pg. 67-72, 13-25, Pl. Exh. 5]. After Dr. Wexler asked if her break times could be adjusted, Dr. Long asked if that was because her "breasts need to refill," a comment he made in a derogatory tone, along with a rude gesture. [Wexler Decl. attached to Plaintiff's brief ¶15]. At a meeting in early May 2014, Dr. Long became angry at Dr. Wexler because she stated that she would be done pumping completely in two weeks when Dr. Long thought she was already done pumping. [Wexler Dep Pg. 65-66, 14-2; Wexler Decl. attached to Plaintiff's brief, ¶ 19].

These facts alone create a strong inference that Dr. Long bore hostility and bias toward Dr. Wexler, specifically based on her pregnancy. He made these comments to her in the specific context of discussing her salary and terms and conditions of employment. These facts would permit a finding that, at the very least, Dr. Wexler's pregnancy was a motivating factor in her termination. This is particularly true when these facts are combined with Dr. Wexler's case under the McDonnell-Douglas burden-shifting framework, as described below.

**C. Plaintiff satisfies her burden under the McDonnell-Douglas burden-shifting framework to prove discrimination**

**1. Plaintiff's prima facie case**

To make out a prima facie case of pregnancy discrimination, a plaintiff must show: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment; and (4) the plaintiff suffered from differential application of work or disciplinary rules. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)

Defendant does not contest that Dr. Wexler was qualified for her position (element two) and was subject to adverse employment action (element three). (Defendant's Brief [Doc 23-1] at 4). Rather, it contends that Dr. Wexler is not a "member of a protected group," because breastfeeding ceases to be a pregnancy-related condition after a child's first birthday. (Id. at 5-7). It also contends that Dr. Wexler cannot show that she was subject to disparate treatment, in order to meet the final element of her prima facie case.

**(a) *Dr. Wexler's need to express milk did not cease to be a pregnancy-related medical condition on her child's first birthday***

Defendant concedes that discrimination on the basis of pregnancy is unlawful, and that discriminating on the basis of an employee's need to express

milk is discrimination on the basis of a pregnancy-related medical condition. (See Defendant's Brief at page 5). Nonetheless, it cites a provision in the Patient Protection and Affordable Care Act (ACA) that amends the Fair Labor Standards Act (FLSA) to require certain employers to provide breastfeeding breaks to employees, up until a child's first birthday. (Defendant's Brief at 6). This provision, it argues, should be read to limit Title VII, as amended by the PDA, to breastfeeding-discrimination claims that occur before the child's first birthday. (Defendant's Brief at 6-7). Misleadingly, Defendant cites to an EEOC enforcement guideline to support its proposition. (Id. at 6). However, the cited portion of the guideline comes under the heading "Other Requirements Affecting Pregnant Workers," and is merely a summary of the new requirement under the ACA. See guidelines at (III)(C). There is absolutely nothing in the language of the Affordable Care Act's "breastfeeding breaks" requirement that would demonstrate a Congressional intention to *limit* the PDA's protections against discrimination to breastfeeding before a child's first birthday.

As another district court within the Eleventh Circuit has recently held, discrimination on the basis of an employee's need to lactate constitutes discrimination on the basis of pregnancy. Hicks v. City of Tuscaloosa, No. 7:13–CV–02063–TMP, 2015 WL 6123209, at *19 (N.D. Ala. Oct. 19, 2015); see also

Equal Employment Opportunity Commission v. Houston Funding II, Ltd., 717
F.3d 425, 428 (5th Cir. 2013) ("lactation is a related medical condition of
pregnancy for purposes of the PDA"); Martin v. Canon Business Solutions, Inc.,
2013 WL 4838913, at *8 (D. Colo. Sept. 10, 2013) (employer's denial of "access to
facilities to express breast milk is relevant to whether Defendant discriminated
against [plaintiff] based on her pregnancy.").

The law is clearly established that post-pregnancy medical conditions fall
within the protections of the PDA. As other courts have noted, limiting protection
to medical conditions that occur during the pregnancy would defeat the purpose of
the PDA. See Donaldson v. Am. Banco Corp., 945 F. Supp. 1456, 1464 (D. Colo.
1996) ("It would make little sense to prohibit an employer from firing a woman
during her pregnancy but permit the employer to terminate her the day after
delivery if the reason for termination was that the woman became pregnant in the
first place"); Pacourek v. Inland Steel Co., 858 F.Supp. 1393, 1402 (N.D.Ill.1994)
(citing Congressional testimony, finding that "the PDA gives a woman the right ...
to be financially and legally protected before, during, and after her pregnancy");
Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir.1995) (denying defendant's
summary judgment motion in case where employer fired an employee after return
from maternity leave).

The reasoning of these cases applies with equal force here. Defendant fired Dr. Wexler because she was expressing breast milk, a medical need directly linked to her pregnancy. In other words, "but for" Dr. Wexler's pregnancy, there would be no medical need to express breast mile, without respect to how long she chose to breastfeed her child. There simply is no support in the ACA, or any other statute, for Defendant's proposition that Congress, by requiring certain workplace accommodations for breastfeeding up until the child's first birthday, also intended to place a one-year cap on the protections of Title VII, as amended by the PDA. The accommodation requirements of the ACA are clearly designed to supplement, not to restrict, protections for employees.

Moreover, it is noteworthy that numerous of the statements and actions by Dr. Long occurred *before* Dr. Wexler's child's first birthday. *See supra.* Therefore, because the bias that infected the decision to terminate pre-dated the first birthday, and it is that bias that renders Defendant liable, it is irrelevant whether the PDA's protections end after a child's first birthday. Also noteworthy, the ACA's requirement for lactation breaks only applies to employers with fifty (50) or more employees, which would not include Defendant.

>    (b) *Dr. Wexler has met her burden to produce evidence that she was*
>        *treated differently than an employee without her protected*
>        *characteristic*

For a plaintiff's prima facie case, a relevant comparator is an employee who is similarly situated to the plaintiff "in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir.2004).  In determining whether a comparator is similarly situated, we inquire "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke–Fowler v. Orange Cnty., 447 F.3d 1319, 1323 (11th Cir.2006). Importantly, for purposes of summary judgment, where there is a factual dispute as to whether two individuals are similarly-situated comparators, this factual dispute must be resolved by the jury, not the court. See Pinder v. John Marshall Law Sch., LLC, 11 F. Supp. 3d 1208, 1218 (N.D. Ga. 2014) ("the Court finds that Burch is a viable comparator—albeit barely. . ."; disputes as to the differences between comparators "illustrate the fact-intensive nature of this dispute.")

As an initial matter, according to Dr. Wexler and Dr. Axelrod, they didn't even engage in any misconduct. [Axelrod Dep. Pg  39-40, 5-5; Wexler Decl. attached to Plaintiff's brief ¶48]. Dr. Wexler states that she was never serious about any plan to open a practice and did nothing wrong. [Wexler Decl. attached to Plaintiff's brief ¶49] Dr. Axelrod testified that she engaged in the exact same sort

of conversation as Dr. Wexler did, i.e. discussing the possibility of starting a new practice with a fellow physician. [Axelrod Dep Pg 44, 2-7] Dr. Axelrod characterized it in the same way as Dr. Wexler, as a hypothetical short conversation. [Axelrod Dep. Pg 35, 4-12; 39-40, 5-5; Wexler Dep Pg. 70, 16-18; Wexler Dep Pg. 17, 16-18]. The short conversation was just a thought and Dr. Axelrod says she did nothing wrong by engaging in the conversation with Dr. Wexler. [Axelrod Dep. Pg 39-40, 5-5]

Dr. Wexler identifies Dr. Axelrod as her comparator. Dr. Axelrod engaged in conduct that, for all intents and purposes, was identical to the alleged misconduct cited by Dr. Long to justified Dr. Wexler's termination, yet Dr. Axelrod was not fired. Defendant does not and cannot challenge that Dr. Wexler and Dr. Axelrod have the exact same position at Kennesaw, with the exact same supervisor, and they were subject to the same rules regarding workplace conduct, as both were working as part time employees under the same contract. [Long Dep Pg. 58, 7-25]

Defendant argues that Dr. Axelrod is not a suitable comparator for Dr. Wexler for two reasons: first, that Dr. Wexler solicited Dr. Seth and Dr. Axelrod did not; second, that Dr. Axelrod admitted that she had discussions about opening a practice, whereas Dr. Wexler supposedly "lied" when confronted. There are

genuine disputes of material fact with respect to each of these contentions by Defendant.

These distinctions do not sufficiently discredit the basic similarity between these doctors. According to Dr. Long, they both engaged in solicitation activities and each could have been fired. [Long Dep Pg. 44, 8-9]   Dr. Long also testified that each doctor would not have been fired had they not lied about the allegations against them. [Long Dep Pg. 44, 4-17]  Thus each committed the same alleged conduct. See *Pinder v. John Marshall Law Sch., LLC*, 11 F. Supp. 3d 1208, 1218-19 (N.D. Ga. 2014). Further, although Dr. Wexler approached Dr. Seth, it was Dr. Axelrod's initial idea to approach Dr. Seth. [Wexler Decl. attached to Plaintiff's brief ¶28].

There is also factual dispute as to whether Dr. Long knew whose initial idea it was to approach Dr. Seth. Indeed, there were emails confirming that it was Dr. Axelrod's idea to approach Dr. Seth. [Wexler Decl. attached to Plaintiff's brief ¶28].  Dr. Long's testimony that he did not see these emails should not be credited, for purposes of summary judgment. There simply are genuine issues of fact that need to be resolved at trial to determine whether Dr. Axelrod and Dr. Wexler were treated equally and, if not, whether the treatment of Wexler was discriminatory.

Plaintiff has done enough to make her *prima facie* case using Dr. Axelrod as a comparator. *See Holifield,* 115 F.3d at 1562.

Next, the supposed distinction that Dr. Axelrod "admitted" she had discussions about opening a practice is deceptive. Dr. Axelrod did not "admit" to engaging in discussions until after she was asked whether she had engaged in such conversations in a 10 to 15 minute conversation with Dr. Long. [Axelrod Dep. Pg 43-45, 21-10] Dr. Wexler was not asked, rather she was screamed at and then fired without being given an opportunity to address the allegations against her in a call that lasted far less than 2 minutes. . [Wexler Decl. attached to Plaintiff's brief ¶43-47] This is itself different treatment—the lactating employee is fired immediately with no chance to explain; the non-lactating employee is given an opportunity to explain and then retained.

Also, Defendant did not accuse Plaintiff of lying until after she had filed her EEOC Complaint. [Wexler Decl. attached to Plaintiff's brief ¶51] Defendant did not accuse Plaintiff of lying while on the termination phone call. [Wexler Decl. attached to Plaintiff's brief ¶50] Defendant did not accuse Plaintiff of lying in the separation letter. [Wexler Decl. attached to Plaintiff's brief ¶50] When an employer offers "shifting reasons" for an adverse employment action, this will

permit a juror to infer that the employer is not being honest about its explanation. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004).

It should be noted that if Defendant is allowed to prevail on summary judgment in this case because Plaintiff could not show a comparator, a massive loophole in Title VII would be created. A Defendant would always be able to claim that a Plaintiff was lying and that is why one employee is not a valid comparator to another employee when they engaged in identical alleged conduct. A Defendant can simply say with no documentation or corroborating evidence at all that it determined that a Plaintiff had lied about its alleged misconduct and that could give a basis for firing an employee. If nothing else, because Dr. Wexler *disputes* the allegation that she lied (see. [Wexler Decl. attached to Plaintiff's brief ¶39; Wexler Dep Pg. 22, 10-23], Defendant is not entitled to summary judgment on the question of whether that in fact occurred. See *Hollins v. Atlantic Co.,* 188 F.3d 652, 659-60 (6th Cir.1999) (where there is a dispute regarding whether a fact makes two employees comparable, "on a motion for summary judgment, the evidence presented by the non-moving party is to be taken as true and all reasonable inferences that may be drawn therefrom are to be drawn in the non-moving party's favor.")

The different treatment of Dr. Wexler, as compared to Dr. Axelrod, provides an inference of discrimination at the summary judgment stage. There is a disputed issue of fact regarding whether Dr. Wexler's conduct was sufficiently different from Dr. Axelrod's conduct to warrant different treatment. Further, Defendant does not point to any established policy, either written or verbally communicated to its employees, that distinguishes different types of solicitation activities with one being worse than the other. Dr. Long admits that Dr. Wexler and Dr. Axelrod both engaged in solicitation activities and both could have been fired. [Long Dep Pg. 58, 4-6] There is nothing in the record that would be a distinction between different solicitation-related misconduct. Further, the level of the corresponding discipline is staggering. Plaintiff was immediately fired and Dr. Axelrod was given no discipline.

Therefore, there is a disputed issue of material fact regarding whether the misconduct of Dr. Axelrod and Dr. Wexler diverges sufficiently to justify different treatment.

### 2.  Plaintiff can rebut Defendant's proffered explanation

Once the plaintiff has made out a prima facie case of discrimination, and the employer has proffered a non-discriminatory explanation for the adverse employment action, the plaintiff can defeat summary judgment by offering

evidence to call into question the credibility of Defendant's explanation. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1529 (11th Cir. 1997). Once the plaintiff has offered such evidence, the trier of fact may "infer the ultimate fact of intentional discrimination, and . . . upon such rejection, "[n]o additional proof of discrimination is required." <u>Id.</u> quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993). Of course, "if the jury concludes that [the employer's] proffered explanation [is] unworthy of belief, it may still remain unpersuaded that discrimination was the real reason for the [termination]. That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case." <u>Kragor v. Takeda Pharm. Am., Inc.</u>, 702 F.3d 1304, 1311 (11th Cir. 2012).

Moreover, a plaintiff's ability to show pretext is not limited to showing that the employer's stated reasons are "false"; rather, the obligation of the plaintiff is to "rebut" those stated reasons "by showing that the employer's proffered *explanation is unworthy of credence*." <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 143 (2000) (emphasis added). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, *or that the reason stated was insufficient to warrant the adverse action*." <u>Rioux v. City of Atlanta</u>,

520 F.3d 1269, 1279 (11th Cir.2008) (emphasis added). The plaintiff can either

show that the proffered reasons are false or, equally persuasively, that the proffered

reasons "were not its true reasons." <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d

763, 771 (11th Cir. 2005)

Defendant proffers two explanations for firing Dr. Wexler. These are the

same two reasons that Defendant asserts distinguish Dr. Wexler from Dr. Axelrod:

(1) Dr. Wexler solicited Dr. Seth; and (2) Dr. Wexler denied doing it.

As previously stated, Dr. Long admits that he did not fire Dr. Wexler for

soliciting. [Long Dep Pg. 49, 21-24] It would be totally absurd to say that Dr.

Long's legitimate non-discriminatory reason for discharging Dr. Wexler is for

soliciting when he admitted that he did not fire Dr. Wexler for soliciting.

According to Dr. Long, he would not have fired Dr. Wexler had Dr. Wexler done

what Dr. Axelrod did. [Long Dep Pg. 44, 4-17]. According to Dr. Long, Dr.

Wexler would not have been fired had she solicited other employees at Kennesaw

Pediatrics but told the truth about it. [Long Dep Pg. 49, 21-24].

There are numerous additional weaknesses and implausibilities in Dr.

Long's account of Dr. Wexler's termination. The only basis for the claim that Dr.

Wexler "lied" about soliciting was the alleged utterance of the words "that's not . .

." after he confronted her. [Defendant's Brief at 10, Wexler Dep. pg 102, 18-21].

This fragment of a sentence, without more, would not, in a reasonable person, constitute a denial of an accusation. Dr. Long himself admitted that he would not interpret the words "that's not" as a denial of allegations "because that's a fraction of a sentence." [Long Dep Pg. 132, 2-7]. Dr. Long is, of course, entitled to rely on his own subjective determination for purposes of his employment decisions; however, "employment decisions may legitimately be based on subjective criteria as long as the criteria are capable of objective evaluation and are stated with a sufficient degree of particularity." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1280 n. 17 (11th Cir.2000); see also Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir. 2000) (there must be "a clear and reasonably specific factual basis upon which [an employer] base[s] its subjective opinion"). Here, an objective evaluation of Dr. Long's testimony—that he interpreted Dr. Wexler's utterance of the words "that's not. . ." to be an explicit denial that she had solicited Dr. Seth—reveals that his contention is facially lacking in credibility. In short, where Dr. Long claims that he terminated Dr. Wexler because she made a statement denying soliciting Dr. Seth, and because Dr. Wexler denies making such a statement, there is a dispute of fact as to this central issue, and summary judgment is not appropriate.

There are numerous other indicia of pretext. Dr. Wexler testified that the phone call he had on which he fired Dr. Wexler could have lasted for up to six (6)

hours. [Long Dep. Pg 35, 3-4, Pg 42-43, 14-16]. Yet, Dr. Wexler testified that it was a very brief conversation. [Wexler Dep Pg. 23, 8-10]. Moreover, subpoenaed phone records show that Dr. Wexler called Dr. Long and the call lasted two minutes and forty-one seconds. [ AT&T Subpoena].

Dr. Long claims that he had a conversation with Dr. Wexler in which she told him that she had not made any plans or attempts to leave the practice and take employees with her. [Long Dep Pg. 38, 4-15]. Dr. Wexler denies this conversation, and states that Dr. Long fired her without giving her an opportunity to respond to his allegations of solicitation accusations. [Wexler Dep Pg. 66, 6-16].

Dr. Long claims that he told Dr. Wexler that he believed her to be lying and didn't trust any of her answers. [Long Dep Pg. 38, 15-17] However, Dr. Long did not ask for any emails or corroborating evidence from Dr. Wexler. [Wexler Decl. ¶37]. Dr. Long took no notes and did not create any file of the events that happened on May 15, 2014. [Long Dep Pg. 78-79, 20-4]. According to Dr. Long, Dr. Wexler would not have been fired had she solicited other employees at Kennesaw Pediatrics but told the truth about it. [Long Dep Pg. 49, 21-24]. Dr. Long was not concerned about Dr. Wexler soliciting his employees after she had been fired. [Long Dep Pg. 56, 9-13] Dr. Long did not seek any form of injunctive

relief to prevent Dr. Wexler from engaging in solicitation activities even though he had that option. [Long Dep Pg. 52-56, 14-19].

These additional facts will support Dr. Wexler's contention that she did not, in fact, lie to Dr. Long in the termination phone call, and that Dr. Long lacked a reasonable basis for believing that Dr. Wexler did lie. Therefore, because there is evidence casting grave doubt of the credibility of Defendant's proffered explanation for Dr. Wexler's termination, summary judgment must be denied.

Defendant makes several fact-based arguments that are not suitable for resolution on summary judgment. It argues that the facts that it provided Dr. Wexler with positive performance reviews and accommodated her pumping "negate any suggestion" of discriminatory motive. (Defendant's Brief at 21-22). But, the positive performance reviews were tied together with criticism for her pumping. [Wexler Decl. attached to Plaintiff's brief ¶14-21]  Defendant further argues that two weeks of additional pumping would be too trivial a reason to terminate someone. (Id. at 22-23). Defendant's focus is misplaced because it relies exclusively on the fact that Dr. Long was acting pursuant to his business judgment and not pursuant to his discriminatory motive against lactating mothers. Most importantly, Defendant's arguments are credibility arguments to be decided by the finder of fact, and do not entitled Defendant to summary judgment. See Castle v.

Sangamo Weston, Inc., 837 F.2d 1550, 1559 (11th Cir.1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact.")

### D. The Quigg mixed-motive test

In *Quigg*, the Eleventh Circuit adopted the Sixth Circuit's approach to mixed-motive claims: "That framework requires a court to ask only whether a plaintiff has offered 'evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action.' " *Id.* at 1239 (emphasis in the original) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008)). Thus, in a mixed-motive framework, this Court must conclude "whether the 'plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [her protected characteristic] was a motivating factor for [an] adverse employment decision.'" *Id.* at 1239 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003)).

Beginning on page 19 of their brief and concluding on page 21, Defendant insinuates that Plaintiff has not pled a mixed motive claim. However, this is false. Paragraph 104 pleads a single motive claim and the Complaint after paragraph 104 states:

## B. MIXED-MOTIVE CLAIM

105. Alternatively, Defendant motivated in part by Plaintiff's status as

a female and motivated in part by other reasons, discriminated against

Plaintiff in violation of Title VII by discharging her and then suing

her.


Further, Defendant admitted in their own motion to extend the page limit to

35 pages ([Doc. 22] pg. 2 of 6) that "Defendant requests additional 10 additional

pages, for a total of 35, because (i) plaintiff asserts both single motive gender and

pregnancy discrimination claims and mixed-motive gender and pregnancy

discrimination claims, which have different tests (Plaintiff's Compliant ¶¶104 and

105), (ii) the *Quigg* mixed-motive test is relatively new and may require additional

analysis (to do it properly suggests a careful analysis of the facts)."

As set forth *supra*, there is significant evidence that Plaintiff's pregnancy

played a role in Dr. Long's decision to terminate her. Therefore, even if this Court

determined that Plaintiff could not prove that pregnancy was the "but for" cause of

her termination, she would still be entitled to a jury trial on the question of whether

her pregnancy was "a motivating factor."

### E.  <u>Dr. Levine's testimony should not be excluded</u>

Under <u>F.R.E. 404(b)</u>, "[e]vidence of other crimes, wrongs, or acts ... may ... be admissible for ... purposes, such as proof of motive, opportunity, intent, pre¶tion, plan, knowledge, identity, or absence of mistake or accident." It is well established that this sort of "me too" evidence of discrimination against other parties is admissible to prove discriminatory intent. <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1292 (11th Cir. 2008)

The Supreme Court has held that wide evidentiary latitude must be granted to those attempting to prove discriminatory intent and that "the trier of fact should consider all the evidence." <u>*U.S. Postal Serv. v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)</u>. Those discriminated against will often not be able to rebut a plausible cover-up with direct evidence, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." <u>*Id. at 716, 103 S.Ct. 1478.*</u>

Dr. Long was the same decision-maker for Dr. Wexler and Dr. Levine. As shown, he had exhibited a discriminatory intent towards Dr. Wexler. Evidence regarding his treatment of Dr. Levine is probative of whether or not Dr. Long had a discriminatory intent towards Dr. Wexler and should be admitted.

Dr. Long learned that Dr. Levine had taken out an AFLAC insurance policy and upon learning of this told her that he didn't want to hire her full time if she was going to become pregnant. [Levine Dep., Pg. 9, 4-14].  Dr. Levine responded that she "needed the money" because she has student loans and that "[she] needed to work full time" and "was going to work full-time whether [she] was pregnant or not." [Levine Dep. Pg 9, 12-18]. Dr. Long stated to Dr. Levine "Why don't you go stand over by the space heater to dry up your eggs" implying that she should become infertile. [Levine Dep. Pg. 10-11, 11-1] Dr. Levine believes she was discriminated against by Dr. Long when Dr. Long refused to give her a full time position because she wanted to become pregnant. [Levine Dep. Pg. 9-10, 4-8]. Dr. Long discriminated against Dr. Levine by not increasing her hours when he told her his excuse for not increasing the hours was due to her not being board certified and him not knowing whether she had passed her boards despite another doctor receiving more hours even though she was not board certified having failed her boards twice and was not even waiting on results. [Levine Dep. Pg 21-22, 10-9]. Dr. Long made a comment to Dr. Levine that he didn't want any part of a potential candidate for a position at his practice which physician candidate would be undergoing IVF. [Levine Declaration, Ex. 15 to Kennesaw Pediatrics MSJ].

Because the testimony of Dr. Levine is specific to Dr. Long's anti-pregnancy comments to her, in the context of workplace issues, it is highly probative on the issue of intent, and is admissible "me too" evidence under <u>Bagby</u>.

### F.  Plaintiff does not allege discrimination based on a demand for accommodation

Defendant's last point in their brief states that Plaintiff was fired because she demanded pumping breaks and was not given them. This simply is not true. Defendant's failure to accommodate is completely irrelevant in our case because that is not what Plaintiff's claim is based upon. Plaintiff has alleged that although Defendant accommodated Plaintiff's request to pump breast milk, Defendant fired Plaintiff for pumping breast milk. Defendant accommodated every single of Plaintiff's pumping break requests until it decided it had had enough of Dr. Wexler. The decision to fire Dr. Wexler had nothing to do with its refusal to accommodate to breastfeed or express milk while still performing her job but rather Dr. Wexler was fired because Dr. Long did not want anything to do with her because she did not stop pumping when Dr. Long thought she would be finished pumping. In conclusion, Plaintiff is entitled to the protections of Title VII and the PDA because she was expressing breast milk and Defendant discriminated against

her because she was expressing breast milk and not because it failed to

accommodate her breast feeding schedule requests.

**III.    <u>Conclusion</u>**

For these reasons, Plaintiff respectfully requests that this Court DENY

Defendant's Motion for Summary Judgment.


Respectfully submitted, this 3rd day of March, 2017.


By: <u>/s/ Shimshon Wexler</u>
GA Bar No 436163
The Law Offices of Shimshon Wexler, PC
315 W Ponce de Leon Ave Suite 250
Decautr, GA 30030
(212) 760-2400
(917) 512-6132 (FAX)
<u>shimshonwexler@yahoo.com</u>